## J. L. FLEWELLIN V. JULIA PROETZEL.

### No. 3082.

80   191|
92   214|
92   457|

1.   **Street Assessments — Municipal Powers.** — In order to enable a municipal corporation to charge the owners of property abutting on a street with the cost of its improvement the power must not only be expressly conferred by law, but the provisions of the law must be strictly pursued.

2.   **Assessments for Street Improvements.** — When all the prerequisites of the law (city charter) have been complied with and a contract for street improvements let, and the work done and accepted by the city authorities, it is competent for the city authorities to supply defects and to correct errors in the matter of issuing *the improvement certificates* provided for, against the abutting property owners.

3.   **Same—Approval of Engineer's Report.** — The contract having been let, the city engineer's report of lots and lot owners, amounts, etc., to each, was not approved by the city council. This approval was necessary as basis for issuance of the certificates, and without it they were void.

4.   **Same—Amended Report and Approval.** — The city charter not determining the time within which the engineer's report made after the bid is accepted shall be approved by the city council, it was competent for them to act after the work had been done, and to make a corrected roll and approve it within a reasonable time after the improvements were completed.

5.   **Amended Engineer's Report.** — The report of the engineer made after the work was done placed the cost of frontage per foot at $1.20, instead of $1.15. The new engineer also certified to the report as correct according to his knowledge and belief. As he had all the facts before him it was competent for him to correct the former report, and his certificate was sufficient.

6.   **Repeal of City Charter.** — By amended city charter the chapter 23 of the amended city charter of 1883 was supplied by one prescribing a different mode of making street improvements. This however can not be construed as repealing the old section as to existing contracts. The Legislature could not repeal any provision of the old law so as to impair a contract made under it.

7.   **Immaterial Matters.** — The defendant urged that a controversy had existed between her and the city about the width of the sidewalk fronting on her lots, and that the pavement by the city had extended across the sidewalk nearly to her line, and that planks used in the street pavement and extending upon her sidewalk were of unequal lengths. These matters were irrelevant to the issues arising in the suit upon the street improvement certificates.

APPEAL from Harris. Tried below before Hon. James Masterson. The opinion contains a statement.

*Jones & Garnett*, for appellant.—1. The court erred in rendering judgment in defendant's favor that plaintiff take nothing by this suit, and that defendant recover of him (plaintiff) all costs in this cause incurred, and in not rendering judgment in plaintiff's favor for the amount of the certificates sued on and for costs and foreclosing the lien set up by plaintiff as prayed for in his petition; because the evidence showed conclusively, without contradiction, that the certificates sued on were regularly and properly issued in accordance with the charter

of the city of Houston as it existed prior to the amendment passed in 1889; and that everything required by the charter to authorize the issuance of said certificates and to make them binding against defendant and a lien on her property had been done and fully complied with; and that plaintiff's right to said certificates had accrued before any amendment to the charter was passed in 1889; and that said certificates and the amounts for which the same were issued were due and unpaid and held and owned by plaintiff, and that the same were a valid and subsisting claim against defendant and a lien on her property sought to be subjected in this cause. Section 23 of the charter of the city of Houston as amended by the Legislature of 1883.

2. The fact that the city engineer in certifying to the roll of December 16, 1889, did so according to the best of his knowledge and belief, was no reason for refusing plaintiff the relief prayed for. No engineer could have certified otherwise, and the roll certified by the engineer amounted to nothing until approved by the council. The council having approved the roll, after it had been certified to by the engineer, confirmed the truth of his certificate, and it was all that the law required. The judgment of the court below shows on its face that it was rendered in defendant's favor on the ground that the city engineer had not properly certified to the roll upon which the certificates issued.

3. The fact that after plaintiff's contract was made and carried out by him, and after he had done all that was required of him to entitle him to the certificates and lien created by them, the charter of the city was amended and a different mode of payment provided for street improvements thereafter contracted for, could not affect or impair the rights that had become vested in plaintiff under the charter as it existed prior to the amendment of 1889. In other words, plaintiff could not be divested by subsequent legislation of his rights under the law existing when they accrued. Cool. on Const. Lim., 288, 289; McCauley v. Brooks, 16 Cal., 12.

*W. P. Hamblen,* for appellee.—There was entire failure by the city authorities to give a lien upon appellee's property.

The charter of the city of Houston contained certain requirements to give a lien on abutting property, among which were a roll, conformative to the provision of the charter then in force, contained in the court's conclusion of law and fact, which roll was a prerequisite to the performance of the work; as must be understood from the language, "to be improved," "the correctness of which roll must have been certified to by the city engineer and the rolls submitted to the council for its approval," and then, "if the said roll is approved by the city council the sum of money therein stated and assessed against such property shall be a tax against such owner, a lien and charge upon the property so held and owned by each."

Appellant's brief admits that this was never done. There was an estimate made after the work was done, with certificate of J. W. Breedlove, city engineer.

The roll was never approved by the city council. That part of the charter was repealed March 15, 1889 (Special Laws 21st Leg., p. 109), leaving, as will be seen, section 23 of old charter entirely changed. On December, 16, 1889, an effort was made to create a lien by a new roll, but the same was made by an engineer not the engineer in charge of the work, the latter having died, with a defective certificate as shown in the court's conclusion of law and fact, showing an entirely different amount per foot frontage. This latter pretended roll was approved by the city council on December 23, 1889, and new certificates issued thereon after all provisions of the charter had been long repealed and the work had been completed fourteen months.

The conclusion of facts and statement of facts both show that the resolution was to pave or plank Washington Street, but instead the city authorities seized appellee's sidewalk and placed the planks over eight feet of it and drove her to a suit to enjoin and remove the obstruction.

The entire proof shows that the action of the city council and appellant was most oppressive and the judgment of the court should be affirmed.

GAINES, ASSOCIATE JUSTICE.—This action was brought by appellant to recover of appellee the amount of two certificates of assessment for work done in constructing a pavement on a street in the city of Houston in front of the defendant's property, under a contract with the city authorities. The improvement was made in pursuance of the power conferred upon the city council by the amended charter granted in 1883. Section 23 of that charter contains this provision:

"The city council shall have full power and authority to grade, shell, pave, repair, or otherwise improve any avenue, street, alley, or other highway, or any portion thereof, within the limits of the city whenever by a vote of two-thirds of the aldermen elected such improvement shall be declared necessary for the public interest, which grading, shelling, paving, or repairing shall be done at the cost and charge of the owner or owners of the lot or lots or block or blocks fronting on such alley, avenue, street, or other highway to be improved, and the cost of such improvements, together with the expense of the collection thereof, shall be a tax against the owner or owners of such lot or lots or block or blocks, as well as a lien and incumbrance upon the property itself.

"The city council shall, by resolution duly passed, designate the street or streets or portions thereof to be improved, the nature of the improvement to be made, and the material to be used. It shall be the duty of the mayor, after the passage of such resolution, to have the necessary plans and specifications for such improvement prepared by

the city engineer, which plans and specifications after being approved by the city council shall be advertised, together with the resolution aforesaid, and bids shall be solicited for the construction of such improvements. After a bid for the construction of such improvements shall have been accepted by the city council, it shall be the duty of the mayor to cause to be prepared by the city engineer a roll showing the number of lots and blocks fronting on such street, alley, or avenue to be improved, the names of the owner or owners of each lot, part of lot, or block, and if unknown it shall be stated, the number of feet frontage owned separately by each person or jointly with others, the cost per square foot frontage of such improvements, and the total proportional cost of such improvements necessary to be paid by each property owner fronting thereon. The correctness of said roll shall be certified to by the city engineer and the roll submitted to the council for its approval. If said roll is approved by the city council the sums of money therein stated and assessed against each property owner or against one or more property owners jointly shall be a tax against such owner or owners and a lien charge and incumbrance upon the property so held and owned by each. The sum assessed against each property owner on said roll shall be divided into two equal parts, one to be payable when the improvements contracted to be made on each respective block shall be completed, and the balance shall be due six months thereafter. For such sums of money certificates shall be prepared and issued, signed by the mayor and attested by the city secretary and treasurer under his official seal. Each certificate shall show upon its face the amount for which it is drawn, the name of the property owner from whom the tax is owing, the number of feet frontage, the number of the lot or lots and block upon which said money is a lien; that said sum of money is a tax against the property owner named and a lien upon the property described; the date when it will be payable; that it is issued for street paving, naming the street, the date of the resolution authorizing the street to be paved or improved, and that it is issued by authority of this section of the charter. Such certificates when so issued shall be delivered to the contractor or person authorized by him to receive the same, as follows: One certificate for one-half of the sum assessed against such property owner when the respective blocks in which such owner's property is situated shall have been completed, and one certificate for the balance upon the completion of the contract and the acceptance of the work by the mayor. Such certificate shall bear interest from the date thereof at 8 per cent per annum, which rate shall be expressed therein, and when issued in accordance with the provisions of this section shall be evidence that all the requirements and prerequisites of the law have been complied with. Should the property owner fail to pay the amount of such certificate when the same becomes due, the owner thereof may institute suit for the enforcement of the tax and the fore-

closure of the lien provided for in any court having jurisdiction."
Special Laws 1883, p. 17.

The evidence adduced upon the trial showed that on the 27th day of
August, 1888, the city council of Houston passed by the required two-
thirds vote a resolution declaring that it was necessary to the public in-
terest that that portion of Washington Street extending from the east
line of Tenth to Third Street should be graded and paved with long
leaf pine plank at the expense of the owners of the abutting property.
Specifications for the work having been prepared and duly approved
by the city council, bids were invited and the bid of plaintiff accepted.
Accordingly on the 3d of October, 1888, plaintiff entered into a written
contract with the city for the performance of the work in accordance
with the plans and specifications and at the price stipulated in his bid,
and in pursuance of that contract completed the work on the 30th day
of the same month.   On the day last named one Breedlove, then city
engineer, returned a roll showing the lots and blocks fronting upon the
streets upon which the improvement was made, together with the names
of their respective owners and the cost of the improvements assessed
against each.   This roll was duly certified by the city engineer but was
never approved by the city council.   Although the roll was not ap-
proved as the charter required, the mayor and secretary issued certifi-
cates upon it.   The name of the appellee appeared on this roll as the
owner of five lots with a frontage of two hundred and fifty feet, and the
price for the paving was stated to be $1.15 per front foot.   The certifi-
cates issued upon this roll having been found defective and some of
them not having been paid, the city council on the 9th day of Decem-
ber, 1889, by a resolution provided that the city engineer should make
out a new and corrected roll, and that upon a return of the unpaid certifi-
cates to be canceled new certificates should issue.   The new roll was
made out and was certified to by one Lewis, as city engineer, to the
best of his knowledge and belief.   The price of the paving upon this
roll was put at $1.20, and in so far as appellee was concerned there was
no other charge.   This roll was approved by the city council, and the
first certificates against the property of the appellee having been re-
turned, the mayor and secretary issued new certificates made out from
the second roll.   These are the certificates upon which this suit is
brought.   The bid of the plaintiff for the paving was $2.40 per lineal
foot of the street, of which one-half ($1.20) would be properly assessable
against the property owners on each side.   This accords with the last
roll.   Why the price was given at $1.15 upon the first roll does not ap-
pear.   Because of the irregularity in the second roll and in the issue of
the certificates sued upon the court gave a judgment for the defendant.
We think this was error.

It is not to be doubted that in order to enable a municipal corpora-
tion to charge the owners of property abutting on a street with the cost

of its improvement the power must not only be expressly conferred by law but the provisions of the law must be strictly pursued. The successive steps directed to be taken preliminary to ordering the work to be done, the manner of letting the contract, and the mode of constructing the improvement, when provided for in the law, are intended for the protection of the property owner and are his safeguards against the exercise of arbitrary power. Each act required to be done is essential to the exercise of the jurisdiction and each must be rigidly performed. The courts can not say that the omission of some requirement is unimportant, or that an act different from that directed is substantially as good. The effect of the proceeding being to charge the property of the citizen with a burden for the public benefit, the requirements of the law as to the exercise of the power should be deemed mandatory. But when the preliminary steps required by the law have been taken and the contract has been let and the improvement has been made as authorized by statute, it may be doubted whether a more liberal rule should not be extended to the acts which are subsequently to be performed in order to perfect the remedy of the contractor for the collection of his debt. The former provisions define the mode in which the right as against the owner of the property is to be acquired — the latter pertain only to the remedy for the enforcement of the right. But however this may be, we are of opinion that under the section of the charter we have under consideration there existed no reason why an assessment could not be corrected, or when one wholly invalid had been made a new roll could not have been prepared. The only provision in the section of the charter just referred to as to the time when the roll should be prepared by the engineer, is to the effect that after the acceptance of any bid the council shall cause the engineer to prepare the roll. It was clearly intended that it should not be done before the contract was entered into; and in point of fact the roll could not be completed before the bid was accepted, since before that time the price could not be known. But it would seem that there was no other limitation as to the time. There was no need of the roll until the work was in part completed; and if the contractor did not demand it no reason existed why the roll should be made until the entire improvement was finished. In fact the appellee does not claim that such is the proper construction of the law. But it seems to be contended that because the first roll was not approved, and because the second was certified to upon the knowledge and belief of the engineer, and long after the work was completed, the second roll and the action of the council thereon were void. But we see no reason why the roll could not have been prepared within any reasonable time after the improvement was completed, or why an incorrect roll could not be substituted by a correct one. For the proposition that such action is proper there seems

to be ample authority.   Wood v. Strother, 76 Cal., 545;  Himmelmann v. Cofran, 36 Cal., 411;  Ball v. Balfe, 41 Ind., 221;  Balfe v. Johnson, 40 Ind., 235;  Schertz v. People, 105 Ill., 27.

In the case before us the first roll was clearly incorrect.   The price stated in it was less than that allowed by the contract.   It was never approved and could never have properly received the approval of the city council.   The certificates issued upon it were therefore void.   Under such circumstances should the contractor lose his debt?   We think not.  We think it was proper and competent for the city council to call for an amended roll, and when correct to approve it and to call in the old certificates and to issue new.   We do not see that the appellee was in any manner injured by this action.

But it is insisted that the latter roll was void because the engineer certified to the best of his knowledge and belief.   Could any one do more than this?   He had all the data before him: first, the report of his predecessor as to the amount of the work; and second, the written contract between the appellant and the city, which showed the price at which the work was to be performed.

But it is also claimed that the certificates sued on are void for the reason that before their issue the section of the charter under which the contract was let had been repealed and a new section substituted, providing a wholly different mode of making street improvements and a different method of issuing certificates.   Special Laws 1889, p. 89.   The provisions of the last amendment to section 23 of the city charter are so variant from the section as it existed at the time of the contract that certificates in accordance with the new section for work done under the old could not be issued without materially altering the terms of the contract.   The Legislature could not repeal the law or any of its provisions so as to impair the contract.   If it had provided as effective a remedy under the new as existed under the old it might be held that the old law was repealed.   But such is not the case.   The certificates provided for in the new section are materially different from those provided for in the old.   It is not to be presumed that the Legislature intended to repeal the old section as to existing contracts.

It was proved upon the trial of the case that the appellee at the time the improvements on the street in front of her property were undertaken had claimed a sidewalk on the street ten feet in width; that she brought suit against the city to enjoin any interference therewith, and that the suit was compromised and a judgment entered which bound the city to leave a sidewalk in front of her property six feet wide.   It was also shown that the paving had been extended over the sidewalk nearly to her property and that the planks next thereto had been left of unequal lengths.   How that matter affects this controversy we are unable to perceive.

There being no dispute as to the facts, and the cause having been tried by the court without a jury, the judgment is reversed and here rendered for appellant.

*Reversed and rendered.*

Delivered March 10, 1891.